FILED'08 JUN 20 15:14usdc-orp

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Case No. 07-642-KI *(Lead Case)* Civil Case No. 07-978-KI |
| vs. | ) ) | CONSOLIDATED CASES |
| KINDERCARE LEARNING CENTERS, INC., | ) ) ) | OPINION AND ORDER |
| Defendant. | ) ) ) | |

Jay A. Christofferson
McCormick Barstow Sheppard
Wayte & Carruth, LLP
P. O. Box 28912
5 River Park Place East
Fresno, California  93720-1501

Attorneys for American International Specialty Lines
Insurance Company

Page 1 - OPINION AND ORDER

James L. Hiller
Hitt Hiller Monfils Williams LLP
411 S.W. 2nd Avenue, Suite 400
Portland, Oregon 97204

      Attorney for Employer Insurance Company of Wausau

David A. Ernst
Nicholas L. Dazer
Bullivant Houser Bailey PC
300 Pioneer Tower
888 S. W. Fifth Avenue
Portland, Oregon 97204-2089

      Attorneys for Defendants


KING, Judge:

These are consolidated cases brought by two insurance companies, American International Specialty Lines Insurance Company ("AISLIC") and Employers Insurance Company of Wausau ("Wausau"), to recover the amount paid in settlement to a child, Nicholas Dawson, through his *guardian ad litem*, in an action against KinderCare and School Specialty, Inc. Before the court are KinderCare's Motion for Partial Summary Judgment (#26) and the insurance companies' Joint Motion for Partial Summary Judgment (#30). For the following reasons, I grant KinderCare's motion and deny the insurance companies' motion.

## BACKGROUND

I.    <u>Law Suit and Settlement</u>

Nicholas Dawson was injured while at a KinderCare facility when he tripped and fell with a plastic toy asparagus spear in his mouth. The asparagus spear was part of a toy vegetable set that KinderCare bought from School Specialty, Inc. Through his *guardian ad litem*, he

brought suit against KinderCare and School Specialty.  The child's lawsuit alleged strict products

liability, negligence and punitive damages against School Specialty, and a single claim of

negligence against KinderCare.

School Specialty notified the Consumer Product Safety Commission ("CPSC"), which

investigated the accident.  It concluded there was no reason to recall the toy asparagus.

KinderCare tendered defense of the lawsuit and demanded indemnification from School

Specialty, pursuant to an agreement between KinderCare and School Specialty.  School Specialty

in turn referred KinderCare's tender of defense and demand for indemnification to its primary

insurer, Wausau.  Wausau accepted KinderCare's tender, although the parties dispute whether

Wausau reserved its right to seek reimbursement of its defense costs.

School Specialty and its insurers settled the lawsuit for $3,508,301.16.

Wausau brings an indemnity claim against KinderCare and/or KinderCare's insurer,

Discovery Property & Casualty Insurance Company (together "KinderCare"), seeking to recover

the $1,000,000 it paid in the settlement.  It also seeks defense costs in the amount of

$231,508.73.

AISLIC, the provider of a commercial umbrella policy to School Specialty, brings claims

for indemnity and contribution to recover $2,508,301.16, the portion of the settlement amount it

paid.

II.    <u>Negotiation and Agreement History</u>

On January 25, 2002, School Specialty signed a KinderCare agreement governing the

prospective vendor relationship between KinderCare and School Specialty, as part of School

Specialty's bid to become a KinderCare supplier.  The parties refer to this agreement as the

Page 3 - OPINION AND ORDER

Vendor Information Packet, or VIP, and it is a printed form that KinderCare provides to all of its

potential suppliers.  The letter accompanying the VIP states the completed forms will provide

"the necessary information . . . to establish an account within KinderCare . . ." and it encourages

the potential supplier to make and retain a copy of the VIP.  Nicholas Dazer Decl., Ex. 1 at 1.

At the top of the Terms and Conditions portion of the VIP, the following statement

appears in a box:  "The following Terms and Conditions apply to all Purchase Orders issued by

the KinderCare Procurement and Supply Services Department.  Fulfilling a KinderCare Purchase

Order constitutes acceptance of this document in its entirety."  Id. at 5.

Section 13 in the Terms and Conditions of the VIP reads:

> 13.  **INDEMNITY AGREEMENT**:  For and in consideration of the covenants of
> KinderCare under this Order, including the agreement of KinderCare to pay to
> Vendor the amounts which may become due and payable in accordance with the
> terms of this Order, Vendor hereby agrees to assume the risk of, indemnify and
> save harmless KinderCare, and its officers, directors, employees, agents and
> successors and assigns of each (hereinafter "Indemnitees") from and against (and
> at the election of Indemnitees, to defend against) all loss, damage, liability, cost
> and expense (including without limitation, reasonable attorneys' fees at trial, on
> appeal and on any petition for review) . . . arising out of any injury (including
> death) to any person or damage to any property resulting from or in any way
> connected with the performance of this Order or the goods and services furnished
> hereunder, regardless of whether or not such loss, damage, liability, cost or
> expense is caused in part by an Indemnitee.  Neither this Section nor any other
> provision of this Order shall be construed in any circumstances to constitute an
> indemnification against loss, damage, liability, cost or expense caused solely by
> the negligence of such Indemnitee.

Id. at 6 (emphasis added).  In addition, the VIP contains a single-page document entitled

"INSURANCE REQUIREMENTS FOR VENDORS," which is attached to the VIP, and which

reads as follows:

**INSURANCE REQUIREMENTS**
**FOR VENDORS**

School Specialty, Inc. agrees to indemnify and hold KinderCare Learning Centers, Inc. harmless from all claims for property damage and claims for personal or bodily injury, including death, which may arise from acts by Vendor, its agents or employees, and its subcontractors and their agents and employees. Vendor agrees to maintain adequate insurance, in form and with companies acceptable to KinderCare, to insure against the aforesaid, as follows:

TYPE OF INSURANCE                    MINIMUM LIMITS OF LIABILITY

* * *

General Liability (including          $1,000,000
contractual liability, completed
operations, products liability,
and contingent liability for
acts of subcontractors)

* * *

Vendor's general liability and automobile liability insurance policies shall **NAME KINDERCARE LEARNING CENTERS, INC. AS AN ADDITIONAL INSURED**, and shall provide KinderCare with a 30 day notice of cancellation.

Id. at 9.

KinderCare did not accept School Specialty's bid. Instead, it accepted ABC School Supply's bid.

School Specialty purchased ABC School Supply in November of 2002. On June 6, 2003, School Specialty and KinderCare entered into another agreement called the Service/Distribution Agreement ("SDA"), with an effective date of August 25, 2002. Plaintiffs say it took approximately two months to negotiate the SDA, but KinderCare currently has no information on the length of the negotiation. The first paragraph of the SDA reads:

Service/Distribution Agreement, dated as of the 25th day of August, 2002 (the

Page 5 - OPINION AND ORDER

Agreement) by and between School Specialty, Inc., a Wisconsin corporation
("SS") and KinderCare Learning Centers, Inc., a Delaware corporation ("KC").
This Agreement <u>shall provide pricing and discount terms to supplement the
vendor information packet</u> executed by School Specialty on January 25, 2002 (the
"VIP"). The Agreement is for a three-year period effective August 1, 2002
through July 31, 2005.

Dazer Decl., Ex. 2 at 1 (emphasis added).

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact

and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The

initial burden is on the moving party to point out the absence of any genuine issue of material

fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains an issue of fact to be tried.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the

evidence is viewed in the light most favorable to the nonmoving party. <u>Universal Health

Services, Inc. v. Thompson</u>, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

In these motions for partial summary judgment, plaintiffs AISLIC and Wausau seek a

ruling on the validity and meaning of the indemnity provision (hereinafter referred to as "Section

13") in the agreement between School Specialty and KinderCare.

Defendant KinderCare seeks partial summary judgment on AISLIC's contribution claim,

and on Wausau's claim for defense costs.

I.      <u>Indemnity</u>

The parties disagree about whether School Specialty has an obligation to indemnify

Page 6 - OPINION AND ORDER

KinderCare in the lawsuit brought by Nicholas Dawson.

I begin with KinderCare's argument about how it believes School Specialty is obligated to indemnify it for the Dawson settlement.

KinderCare argues School Specialty is bound by Section 13 of the VIP, which states School Specialty will indemnify KinderCare for any liability "arising out of any injury (including death) to any person or damage to any property resulting from or in any way connected with the performance of this Order or the goods and services furnished hereunder[.]" Dazer Decl., Ex. 1 at 6. The indemnity obligation applies "regardless of whether or not such loss, damage, liability, cost or expense is caused in part by" KinderCare. Id. According to KinderCare, the later SDA supplements and incorporates the January 25, 2002, VIP.

KinderCare recounts the claims in Dawson's complaint, and contends that the negligence claim against KinderCare was based almost entirely on allegations "resulting from" or "connected with" the asparagus spear, not KinderCare's own actions. Dawson alleged that KinderCare was negligent for "approving the asparagus spear for use in classrooms;" "in purchasing the asparagus spear for use in classrooms;" for "failing to ensure compliance with" statutory standards; "in allowing Nicholas Dawson to play with the asparagus spear;" "in allowing Nicholas Dawson to run with the asparagus spear;" "in failing to adequately supervise Nicholas Dawson;" "in allowing children, including Nicholas Dawson, to play with hazardous toys;" "in failing to adequately inspect the safety of toys with which the defendant allows children to play;" "in failing to train employees regarding toy safety and the recognition of unsafe and hazardous toys;" and "in failing to adequately train employees regarding the safe supervision of children." Dazer Decl., Ex. 7.

Page 7 - OPINION AND ORDER

The only exception to indemnity in Section 13 of the VIP is in the case of KinderCare's sole liability. Dazer Decl., Ex. 1 at 6 ("Neither this Section nor any other provision of this Order shall be construed in any circumstances to constitute an indemnification against loss, damage, liability, cost or expense caused solely by the negligence of such Indemnitee.").

In sum, KinderCare argues Dawson was injured by an asparagus spear sold by School Specialty and Dawson's claim against KinderCare was based almost entirely on allegations "resulting from" or "connected with" the asparagus spear. According to KinderCare, under the unambiguous terms of Section 13 of the VIP, School Specialty and its insurers must indemnify KinderCare unless a fact-finder determines that the injury was caused solely by KinderCare's negligence.

AISLIC and Wausau argue the indemnity provision is invalid or, alternatively, limited for the reasons I address below.

A.    Whether the Indemnity Provision in the VIP is Ambiguous

Plaintiffs argue the SDA is ambiguous about whether it incorporates the terms and conditions of the VIP, including the indemnity provision, into the SDA. In addition, plaintiffs contend the indemnity provision itself is ambiguous because the VIP contains two indemnity provisions: one in Section 13 of the VIP and one in the "Insurance Requirements for Vendors" page attached to the VIP.

Under Oregon law, the interpretation of a contract is a question of law for the court. Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992). The court's goal is to give effect to the intention of the contracting parties. Anderson v. Jensen Racing, Inc., 324 Or. 570, 575-76, 931 P.2d 733 (1997); ORS 42.240 (in the construction of a

Page 8 - OPINION AND ORDER

written instrument the intention of the parties is to be pursued if possible).

"To interpret a contractual provision, . . . , the court follows three steps.  First, the court examines the text of the disputed provision, in the context of the document as a whole."  Yogman v. Parrott, 325 Or. 358, 361, 937 P.2d 1019 (1997).  "If the provision is clear, the analysis ends." Id.

> When considering a written contractual provision, the court's first inquiry is what the words of the contract say . . . . To determine that, the court looks at the four corners of a written contract, and considers the contract as a whole with emphasis on the provision or provisions in question.  The meaning of disputed text in that context is then determined.  In making that determination, the court inquires whether the provision at issue is ambiguous.  Whether terms of a contract are ambiguous is a question of law.  In the absence of an ambiguity, the court construes the words of a contract as a matter of law.

Id. (quoting Eagle Industries, Inc. v. Thompson, 321 Or. 398, 405, 900 P.2d 475 (1995)).

A contract or term is unambiguous if it has only one sensible and reasonable interpretation.  D&D Co. v. Kaufman, 139 Or. App. 459, 462, 912 P.2d 411 (1996).  For a contract or term to be legally ambiguous, it must be susceptible to at least two plausible interpretations when examined in the context of the contract as a whole.  Moon v. Moon, 140 Or. App. 402, 407, 914 P.2d 1133 (1996).

If the contractual provision at issue is still ambiguous after examining the text and its context, the second step "is to examine extrinsic evidence of the contracting parties' intent." Yogman, 325 Or. at 363.  In determining whether an ambiguity exists, the court may consider parol and other extrinsic evidence.  Moon, 140 Or. App. at 407.

If the first two analytical steps have not resolved the ambiguity, the court proceeds to the third and final analytical step:  the use of "appropriate maxims of construction."  Yogman, 325 at

364. This can include the rule that the terms of a contract are construed against the drafter of the language. <u>Hoffman Construction Co.</u>, 313 Or. at 470.

If the language is still ambiguous, then what the parties intended by that language is to be decided by the trier of fact. <u>See Oregon School Employees Ass'n v. Rainier School District No. 13</u>, 311 Or. 188, 194, 808 P.2d 83 (1991) ("[i]f [contract terms] are ambiguous, then the trier of fact is to ascertain the intent of the parties and construe the contract consistently with their intent."); <u>Yogman</u>, 325 Or. at 364.

       1.      <u>Whether the Indemnity Provision from the VIP is Incorporated in the Service/Distribution Agreement</u>

Plaintiffs argue that after School Specialty signed the VIP, KinderCare rejected School Specialty's bid. Plaintiffs suggest there was no agreement until the spring of 2003 when KinderCare and School Specialty negotiated the SDA, and that the SDA did not incorporate the indemnity provision contained in the VIP.

The language at issue in the SDA is as follows: "This Agreement shall provide pricing and discount terms to supplement the vendor information packet executed by School Specialty on January 25, 2002 (the "VIP")." Dazer Decl., Ex. 2 at 1.

Plaintiffs argue that the SDA is ambiguous. Its use of the word "supplement" rather than "incorporate" or "incorporate by reference" makes it ambiguous. In addition, plaintiffs argue the provision is not clear as to what terms of the VIP the SDA supplements. Plaintiffs contend the VIP "supplement[s]" those terms in the SDA related exclusively to "pricing and discounts."

Plaintiffs offer the following extrinsic evidence to assist in resolving the purported ambiguity: The SDA was signed on June 6, 2003, over a year and a half after the execution of

the VIP on January 25, 2002.  KinderCare and School Specialty never discussed the inclusion of

any indemnity provision in the SDA.  The parties entered into negotiations of the SDA after

KinderCare had rejected School Specialty's bid in January of 2002.  School Specialty did not

receive a copy of the VIP before or during the negotiations over the SDA, and the VIP (either

blank or completed) was not attached to the SDA.

In addition, plaintiffs argue School Specialty had a policy of not entering into agreements

that required it to indemnify another party for that party's negligence.  In fact, School Specialty

had rejected several large contracts with school districts because the districts would have

required School Specialty to indemnify them for their own negligence.  Had School Specialty

known that KinderCare intended to have an indemnity agreement cover its own negligence,

School Specialty would not have signed the SDA.[1]

Plaintiffs liken their case to A-C Constr. Inc. v. Bakke Corp., 153 Or. App. 41, 45-46,

956 P.2d 219 (1998), in which the court found the language used incorporated only certain

provisions of an earlier agreement, rather than the entire agreement.  The language in the

purchase order at issue read, "All work to be done according [to] plans and specifications by

Pacific Power & Light Co.," and the court determined this did not require a subcontractor to

abide by all of the terms in the contract between the contractor and Pacific Power & Light Co.

Plaintiffs also heavily rely on Boehm & Co. v. Environmental Concepts, Inc., 125 Or.

_____

[1]Plaintiffs imply that the employee who signed the VIP was not authorized to bind School
Specialty to the indemnity obligation, but he signed his name on the VIP as an "appropriate
authorized official" and again as an "Authorized Representative" of School Specialty.  Dazer
Decl., Ex. 1 at 7-8.  Any policies against indemnity obligations that were not communicated to
KinderCare do not affect School Specialty's acceptance of the VIP.  See Wooton v. Viking
Distributing Co., Inc., 136 Or App. 56, 59, 899 P.2d 1219 (1995) (Oregon subscribes to objective
theory of contracts).

Page 11 - OPINION AND ORDER

App. 249, 254-255, 865 P.2d 413 (1993). In that case, the court analyzed a provision in a
promissory note which stated payments were to be made "with interest at a rate of six percent
(6%) per annum until paid, in accordance with provisions of Paragraph 9(a) of the Agreement
titled 'Agreement to Purchase Notes.' . . . *Such Agreement* is incorporated herein by reference."
125 Or. App. at 254. Defendants in that case argued that the whole Agreement to Purchase
Notes, including a non-competition clause, was incorporated into the promissory note by virtue
of this language, whereas plaintiff argued only Paragraph 9(a) was incorporated into the
promissory note. The court determined the phrase was ambiguous because it could not say either
party's interpretation was "so clear as to preclude doubt by a reasonable person." Id. at 255
(quoting Deerfield Commodities, Ltd. v. Nerco, Inc., 72 Or. App. 305, 317, 696 P.2d 1096
(1985)). The evidence demonstrated that the parties did not intend to incorporate the entire
Agreement because the company's president had not seen it, never discussed a non-competition
clause, and never signed an agreement not to compete.

I first note that the SDA refers to the VIP in a sufficiently detailed way to make it a part
of the SDA. Indeed, "[w]hen a written contract refers in specific terms to another writing, the
other writing is part of the contract." Garrett v. State Farm Mutual Ins. Co., 112 Or. App. 539,
544, 829 P.2d 713, 715 (1992) (insurance policy defined "Personal Injury Protection Act" to
mean certain sections of the Oregon statutes, and court held those statutes were thereby
incorporated by reference). No Oregon court has held that the words "incorporate by reference"
must be used, or that a copy of the referenced document must be attached. Here, in the first
paragraph of the SDA, the parties specifically refer to the VIP and describe it as being executed
by School Specialty on January 25, 2002.

Furthermore, I find the SDA supplements the entire VIP, not just any "pricing and discount terms" in the VIP. Unlike the agreements at issue in A-C Construct. Inc. and Boehm, one could not read the SDA to reference only specific terms in the VIP. Plaintiffs would like me to read the SDA as follows: "This Agreement shall provide pricing and discount terms to supplement *those in* the vendor information packet executed by School Specialty on January 25, 2002 (the "VIP")." Dazer Decl., Ex. 2 at 1 (additional words emphasized). Instead, the phrase reads, "This Agreement shall provide pricing and discount terms to supplement the" VIP. "Supplement" means "something that completes or makes an addition" and "a part added to or issued as a continuation of a book or periodical to correct errors or make additions." Merriam-Webster's Collegiate Dictionary 1184 (10th ed. 1996). The SDA added pricing and discount terms to the VIP.

Even if I had any question about the language of the SDA, I am certain of the meaning after reviewing the provision at issue in the context of the SDA and VIP. See Moon, 140 Or. App. at 407 (examine the term in the context of the contract as a whole). The VIP contains no pricing or discount terms, so it would unreasonable to read the SDA as supplementing pricing and discount terms in the VIP. Instead, the language in the SDA referencing the VIP indicates an understanding that there is a signed VIP in existence between the parties, which operates as the base agreement, and the SDA supplements that base agreement with pricing and discount terms.

        2.      Whether the Indemnity Provision in the VIP is Ambiguous

Plaintiffs next argue the VIP is ambiguous because it contains multiple indemnity provisions. In addition to Section 13, the separate "Insurance Requirements for Vendors" page at the end of the VIP states that "School Specialty, Inc. agrees to indemnify and hold KinderCare

Page 13 - OPINION AND ORDER

. . . harmless from all claims for property damage and claims for personal or bodily injury,

including death, which may arise from <u>acts by Vendor</u>, its agents or employees, and its

subcontractors and their agents and employees." Dazer Decl., Ex. 1 at 9 (emphasis added).

Plaintiffs argue these two indemnity provisions–the one in Section 13 of the VIP and the one in

the "Insurance Requirements for Vendors"–are inconsistent since the "Insurance Requirements

for Vendors" gives KinderCare a narrower right of indemnity. The "Insurance Requirements for

Vendors" covers only damages arising out of the vendor's acts, and not acts caused in part by

KinderCare's negligence. Plaintiffs argue any ambiguity should be resolved against KinderCare,

as the drafter of the agreement.

     I find the "Insurance Requirements for Vendors" is a separate indemnification provision

requiring School Specialty to obtain insurance covering "acts by vendor." Section 13 of the VIP,

in contrast, covers losses arising out of the use of the "goods and services" sold by School

Specialty to KinderCare. The insurance requirements do not make the indemnity provision in

Section 13 ambiguous.

     C.    <u>Whether the Indemnity Provision is Conspicuous</u>

     Plaintiffs characterize the Section 13 indemnity provision as inconspicuous. "Unless the

indemnity provision was specifically bargained for, to be enforceable it must have been brought

to plaintiff's attention or must be conspicuous." <u>Young v. Continental Crane & Rigging Co.</u>, 183

Or. App. 563, 567, 53 P.3d 465, 468 (2002) (citing <u>Anderson v. Ashland Rental, Inc.</u>, 122 Or.

App. 508, 510, 858 P.2d 470 (1993)). It is undisputed that the parties did not bargain for the

indemnity provision, and KinderCare did not bring it to the attention of School Specialty.

Whether a provision is conspicuous is a matter of law for the court to decide.

The contract containing the indemnity provision is governed by Oregon's Uniform Commercial Code. The UCC defines conspicuous to mean when "a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." ORS 71.2010 (10).

In addition, courts look at the following factors: (1) the location of the provision; (2) whether the provision is in small print hidden in a long document; (3) whether a bold faced heading preceded the provision; (4) whether the contract used various "attention getting devices" such as various font sizes, font types, capital letters, font colors and reverse lettering; (5) whether another provision in the contract directed attention to the disputed provision; (6) font size; (7) whether the terms cover a majority of the page; (8) whether paragraphs are printed without indentation or extra spacing between them; (9) whether the provision is only slightly contrasting with the balance of the instrument; (10) whether the title heading is set off from the text in larger bold print; and (11) whether the disputed provision stands out from other provisions on the page. Young, 183 Or. App. at 568-570.

Plaintiffs argue the indemnity provision in Section 13 of the VIP is on page six of the VIP, and printed in size 8 font, in the second column. The provision is surrounded by similar provisions, all in the same font. The paragraphs are not indented, and there are no spaces between them. Plaintiffs argue the indemnity provision does not stand out from any other provision. No other provision references the indemnity provision. Plaintiffs contend that similar provisions have been held inconspicuous as a matter of law. See Seibel v. Layne & Bowler, Inc., 56 Or. App. 389, 390, 641 P.2d 668 (1982) (no one directed attention to provision; font size

Page 15 - OPINION AND ORDER

smaller than court's footnote size; lines longer than footnote lines; no indentation or extra

spacing; "WARRANTY" heading implies making of warranty, not disclaimers); <u>Landgren v.

Hood River Sports Club, Inc.</u>, 2001 WL 34041883, *3 ("Liability of the Club and the Members"

in same typeface and size as other information in five-page Handout); <u>Anderson</u>, 122 Or. App. at

511 (disclaimer on first page surrounded by "typographical nightmare" and disclaimer on back

side was one of eight sections, "all printed in the same, faint type, with identical headings.").

I find the provision is conspicuous as a matter of law. The heading "**INDEMNITY**

**AGREEMENT**" is in capital letters and in bold type, and appears to be in a slightly larger font

than the language of the provision itself. Although it is on the sixth page of the VIP package, it

is on the second page of the Terms and Conditions. Unlike <u>Landgren</u>, the heading is in bold and,

unlike both <u>Landgren</u> and <u>Seibel</u>, alerts the reader to the content of the provision. Unlike

<u>Anderson</u>, the provision is not surrounded by attention-getting fonts and colors, and is printed in

readable type. Furthermore, I am persuaded by <u>Atlas Mutual Ins. Co. v. Moore Dry Kiln Co.</u>, 38

Or. App. 111, 114, 589 P.2d 1134 (1979), in which the court stated the parties were "both

business enterprises" and the bold, capitalized sentence disclaiming warranties would cause "a

reasonably prudent person engaged in business to advert to the immediately following language."

Here, the bold, capitalized heading announcing an **INDEMNITY AGREEMENT** would give a

reasonably prudent person engaged in business the necessary warning to read the language

following it. As a result, the indemnity agreement is valid.

    D.    <u>Whether the Provision Indemnifying KinderCare's Negligence is Clear</u>

Plaintiffs dispute that School Specialty can be required to indemnify KinderCare's

negligence.

Page 16 - OPINION AND ORDER

The rule is that when "contractual language clearly and explicitly provides that a party will be indemnified for a particular loss, even if caused by that party's negligence, the inquiry ends, and the provision is enforced." Blanchfill v. Better Builds, Inc., 160 Or. App. 527, 534, 982 P.2d 53 (1999). Here, the provision provides indemnity even where the liability is caused "in part by" KinderCare. The only exception to indemnity is when the liability is caused solely by KinderCare.

KinderCare's own negligence is explicitly addressed in Section 13 of the VIP. KinderCare is indemnified "regardless of whether or not such loss, damage, liability, cost, or expense is caused in part by Indemnitee." Dazer Decl., Ex. 1 at 6. Section 13 clearly covers losses caused in part by KinderCare's negligence. As a result, I reject plaintiffs' argument.

E.      Whether the Indemnity Obligation is Limited to One Million

Plaintiffs argue the insurance requirement limits the scope of the indemnity obligation to one million dollars. See Sears, Roebuck & Co. v. Montgomery Elevator Co., 63 Or. App. 769, 772, 665 P.2d 1265 (1983) ("[A] provision in an indemnity agreement that requires the indemnitor to carry liability insurance is evidence of the intent of the parties as to the scope of the indemnity obligation."). The one million general liability insurance would constitute "adequate insurance" to "insure against the aforesaid" indemnity obligation. See Dazer Decl. Ex. 1 at 9 ("Insurance Requirements for Vendors").

I disagree with plaintiffs. The insurance requirement specifies that one million dollars is the "minimum limit[] of liability" to "insure against" the indemnity obligation. The language cannot reasonably be read to cap plaintiffs' liability.

///

Page 17 - OPINION AND ORDER

II.    AISLIC's Claim for Contribution

AISLIC brings a claim for contribution against KinderCare.

KinderCare argues that this claim must be dismissed because KinderCare and School

Specialty do not have a proportional share of a common liability.

ORS 31.800 provides:

> **Right of contribution among joint tortfeasors; limitations;**
> **subrogation of insurer; effect on indemnity right.**
>    . . .
>        (2)  The right of contribution exists only in favor of a tortfeasor who has
> paid more than a proportional share of the common liability, and the total recovery
> of the tortfeasor is limited to the amount paid by the tortfeasor in excess of the
> proportional share.  No tortfeasor is compelled to make contribution beyond the
> proportional share of the tortfeasor of the entire liability.

In addition, "proportional share" is based "upon [the tortfeasors'] relative degrees of fault

or responsibility." ORS 31.805(1).

Here, School Specialty has contractually indemnified KinderCare for any and all liability

arising out of the use of the asparagus spear unless the injury was caused "solely by the

negligence" of KinderCare.  Dazer Decl., Ex. 1 at 6.  As KinderCare recognizes, if AISLIC can

prove at trial that KinderCare is solely liable for Dawson's injury, AISLIC can seek

reimbursement from KinderCare.  As a result, AISLIC's claim for contribution is dismissed.

III.   Wasuau's Claim for Reimbursement of Defense Costs

Wausau alleges a claim for reimbursement of its defense costs, in the amount of

$231,508.73.

The parties dispute whether Wausau reserved its right to seek reimbursement of defense

costs, and whether KinderCare was named as an additional insured under the policy.

Since I have found the indemnity provision to be unambiguous, School Specialty was obliged to indemnify KinderCare for "all loss, damage, liability, cost and expense (including without limitation, <u>reasonable attorneys' fees</u> at trial, on appeal and on any petition for review) . . . arising out of any injury (including death) to any person or damage to any property resulting from or in any way connected with the performance of this Order or the goods and services furnished hereunder" unless KinderCare was solely negligent.  Dazer Decl., Ex. 1 at 6 (emphasis added).[2]  Resolution of this claim is contingent on the outcome of a trial on this issue.  As a result, I deny KinderCare's motion.

## CONCLUSION

For the foregoing reasons, I grant in part and deny in part KinderCare's Motion for Partial Summary Judgment (#26) and deny the insurance companies' Joint Motion for Partial Summary Judgment (#30).  KinderCare is entitled to indemnity unless the "loss, damage, liability, cost or expense" was caused solely by KinderCare's negligence.  As a result, AISLIC's contribution claim is dismissed, but Wausau's claim for defense costs is contingent on a determination about KinderCare's negligence.

Dated this _____20th_____ day of June, 2008.

Garr M. King
United States District Judge

---

[2]I do not make any decision about whether Wausau adequately reserved its right to seek reimbursement of its defense costs, or whether KinderCare was named an additional insured. The parties may renew those arguments if necessary.

Page 19 - OPINION AND ORDER