IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**AMERICAN INTERNATIONAL**  
**SPECIALITY LINES INSURANCE**  
**COMPANY,** an Alaska Corporation,

        Plaintiffs,

vs.

**KINDERCARE LEARNING CENTERS,**  
**INC.**, a Delaware Corporation,

        Defendant.

Civil Case No. 07-642-KI *(Lead Case)*  
Civil Case No. 07-978-KI

OPINION AND ORDER

Jay A. Christofferson  
McCormick Barstow Sheppard Wayte &  
 Carruth, LLP  
P.O. Box 28912  
5 River Park Place East  
Fresno, California  93720-1501

    Attorneys for American International Specialty Lines Insurance Company

Page 1 - OPINION AND ORDER

James L. Hiller
Hitt Hiller Monfils Williams LLP
411 SW 2nd Avenue, Suite 400
Portland, Oregon  97204

    Attorneys for Employers Insurance Company of Wausau

David A. Ernst
Nicholas L. Dazer
Bullivant Houser Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089

    Attorney for Defendant

KING, Judge:

Pending before me are defendant KinderCare's Motions for Summary Judgment (#78, #42) and Cross Motions for Summary Judgment (#90, #55) filed by defendants American International Specialty Lines Insurance Company ("AISLIC") and Employers Insurance Company of Wausau ("Wausau") in these consolidated cases.  For the following reasons, I deny KinderCare's motions and grant the insurance companies' motions.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to point out the absence of any genuine issue of material fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the evidence is viewed in

the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## BACKGROUND

These are two consolidated cases brought by Wausau, School Specialty, Inc.'s primary insurer, and AISLIC, which provided a commercial umbrella policy to School Specialty. These insurance companies seek to recover from KinderCare the amount they paid to settle a lawsuit. The underlying lawsuit was brought by Nicholas Dawson, an injured child, against KinderCare and School Specialty in Multnomah County Circuit Court, as Case No. 0312-13913. He alleged he was injured on October 13, 2003 at a KinderCare facility when he fell with a plastic toy asparagus spear in his mouth. The asparagus spear was part of a toy vegetable set that KinderCare had purchased from School Specialty. Dawson alleged claims of strict product liability and negligence. The parties settled the underlying action for $3,508,301.16.

In an August 25, 2002 contract, School Specialty agreed to provide products, such as the toy vegetable set, to KinderCare from August 1, 2002 through July 31, 2005. That contract incorporated the terms of a Vendor Information Packet of January 25, 2002, which included a term requiring School Specialty to name KinderCare as an additional insured under its general liability policy, which was to include product liability. KinderCare was self-insured for the first $500,000 of any exposure, and it carried an excess policy with Discover Property & Casualty Insurance Company.

Wausau brings an indemnity claim against KinderCare and/or Discover Property & Casualty Insurance Company, seeking to recover the $1,000,000 it paid in the settlement. It also seeks defense costs in the amount of $231,508.73. It alleges that KinderCare was self-insured for

the first $500,000, and Discover insured the next $1,000,000 in liability. If these other sources did not provide primary coverage, Wausau seeks a proportionate split of the defense costs and settlement.

AISLIC brings claims for indemnity and contribution to recover $2,508,301.16, the portion of the settlement amount it paid.

The parties have filed cross motions for summary judgment. The insurance companies move for partial summary judgment as follows:

(1) Defendant KinderCare does not qualify as an "additional insured" under either AISLIC's or Wausau's polices;

(2) The insurance companies had no duty to defend or indemnify KinderCare;

(3) If Wausau had a duty to defend, the duty was "excess" to KinderCare's self-insurance or its excess carrier, Discover Property and Casualty Insurance Co.

KinderCare moves for summary judgment against all claims brought by the insurance companies.

## DISCUSSION

While KinderCare initially argued it was "undisputed" KinderCare is an additional insured based on communications it had with the Wausau adjuster, it is apparent that the issue is very much disputed. Accordingly, the question is whether KinderCare is an additional insured under the language of the Wausau and AISLIC policies.

///

I.      Choice of Law Issue

As an initial matter, the insurance companies contend Wisconsin law applies in determining whether KinderCare is an additional insured under the policies. Accordingly, I will evaluate the choice of law rules to determine which state's law applies.

When the laws of more than one jurisdiction arguably apply to an issue, a federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it is located. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

Under Oregon law, the court determines if there is an actual conflict of law on the disputed issue; if not, Oregon law applies. Erwin v. Thomas, 264 Or. 454, 457, 506 P.2d 494 (1973). I find no relevant difference between the laws of Oregon and Wisconsin on the issue I must resolve. The only potential difference identified by the insurance companies is on the question of whether self-insurance could constitute "other insurance," and be deemed primary to the excess coverage provided by Wausau and AISLIC. However, any conflict as to how each state treats self-insurance is not relevant because I need not resolve that particular question. The insurance companies concede that Oregon and Wisconsin courts construe insurance policies using the same rules.

II.     The Wausau Policy Language

The burden of establishing coverage is on the putative insured, the burden of demonstrating the policy excludes coverage is on the insurer, and the burden returns to the putative insured of proving an exception to the exclusion. Ass'n of Unit Owners of Nestani v. State Farm Fire and Cas. Co., 670 F. Supp. 2d 1156, 1159 (D. Or. 2009).

I construe the Wausau policy first. It provides:

**Additional Insured Endorsement – Written Contract**

. . . .

The following paragraph is added to SECTION II - WHO IS AN INSURED:

>    5.   Any person or organization other than a joint venture, for which you have agreed by written contract to procure bodily injury or property damage liability insurance, but only for liability arising out of your <u>ongoing operations</u> performed by you or on your behalf, provided that:
>
>    . . . .
>
>    e.   Additional exclusions. The insurance afforded to any person or organization as an insured under this paragraph 5. does not apply:
>
>    . . . .
>
>        (2) To "bodily injury" or "property damage" included within the <u>"products/completed operation hazard" unless such coverage is required by an "insured contract" between you and the additional insured.</u>

Decl. of James Hiller Ex. 6, at 51 of 97 (emphasis added).

The "products/completed operation hazard" covers "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work[.]'" <u>Id.</u> at 34 of 97. "Your product" means "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . you . . . [and] includes . . . [t]he providing of or failure to provide warnings or instructions." <u>Id.</u> at 35 of 97.

The insurance companies argue that KinderCare is not an additional insured under the policy. The policy limits coverage to liability arising out of School Specialty's "ongoing operations," but that period ended when School Specialty sold the toy asparagus to KinderCare.

Page 6 - OPINION AND ORDER

School Specialty was not providing "ongoing operations" when Dawson was hurt. Additionally, according to the insurance companies, coverage for "ongoing operations" is designed to apply to subcontractors and contractors and the insurers "are unaware of any case, anywhere, where a court has accepted coverage under this endorsement for a purchaser of a product." Pls.' Mem. at 18.

KinderCare almost entirely ignores the clear limitation of coverage to School Specialty's "ongoing operations" and contends instead that paragraph 5.e(2) "explicitly provides coverage for 'products' if such coverage is required in the contract between School Specialty and KinderCare." Def.'s Reply at 7. KinderCare then points to the contract between it and School Specialty in which KinderCare required general liability insurance for product liability. KinderCare simply asserts in a footnote that School Specialty's "ongoing operations" is the sale of educational products. If the court does not accept what KinderCare characterizes as a plain reading of paragraph 5.e(2), KinderCare contends any ambiguity should be construed against the insurer.[1] Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Oregon, 313 Or. 464, 836 P.2d 703 (1992).

To resolve the case, I must interpret the insurance policy. "Ongoing operations" is not a term defined in the policy and Oregon courts have not construed the phrase. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 939 (9th Cir. 2001). Under Oregon law, the primary rule of the construction of insurance contracts is to determine the intent of the parties based on the terms and conditions of the policy. Hoffman, 313 Or. at 469. If a

---

[1] KinderCare also suggests that the Certificate of Liability Insurance is proof that it is an additional insured. The certificate of insurance, which expressly states it "does not amend, extend or alter" rights, does not create coverage. Decl. of Nicholas Dazer Ex. 4. See also Baylor v. Continental Cas. Co., 190 Or. App. 25, 34, 78 P.3d 108 (2003) (certificate stating it "is not the Policy" only provides notice of benefits).

Page 7 - OPINION AND ORDER

term is not defined in the policy, the first method of interpretation is the plain meaning of the term. If there are two or more plausible interpretations of a term, the court should examine them in light of the particular context in which the term is used in the policy and the broader context of the policy as a whole. If the competing plausible interpretations are still reasonable, the term is ambiguous and must be interpreted against the drafter of the language, generally the insurer. Id. at 470-75.

Oregon courts resort to the dictionary to define terms in an insurance policy. Id. at 470; see also Ass'n of Unit Owners of Nestani, 670 F. Supp. 2d at 1163 (defining "sudden" using dictionary); Mutual of Enumclaw Ins. Co. v. Rohde, 170 Or. App. 574, 579, 13 P.3d 1006 (2000) (defining "household" and "family" using dictionary).

The dictionary defines "ongoing" to mean "continuing without termination or interruption" and "operations" to mean "a course or procedure of productive or industrial activity." http://dictionary.reference.com (last visited July 28, 2010). Courts in the Ninth Circuit have considered dictionary definitions of "ongoing" and "operations" and concluded the phrase means "the performance of work actually in process," Tri-Star Theme Builders, Inc./PCL Const. Services, Inc. v. Hawkeye-Security Ins. Co., 653 F. Supp. 2d 973, 978-79 (D. Ariz. 2009), or "simply those things that the company does." Valley Ins. Co. v. Wellington Cheswick, LLC, No. C05-1886RSM, 2006 WL 3030282, at *5 (W.D. Wash. Oct. 20, 2006) (citing Marathon Ashland Pipe Line LLC v. Maryland Cas. Co., 243 F.3d 1232, 1238 (10th Cir. 2001)).

I agree, then, with the insurance companies that School Specialty was not performing "ongoing operations" for KinderCare when Dawson was injured by School Specialty's asparagus. Dawson's injury arose from School Specialty's product, not any operations School Specialty was

performing for KinderCare. KinderCare cites no case for the proposition that the additional insured endorsement covers liability arising from a product sold by the named insured when the policy expressly limits coverage for liability arising out of the named insured's "ongoing operations." See 20 Holmes' Appleman on Insurance § 129.1 (2nd ed. 2002) (two categories of coverage: one covers ongoing operations like manufacturing, contracting, or transportation and the other covers liability arising out of products that the insured manufactures, distributes or sells or its contracting and building operations that it has completed).

Furthermore, KinderCare cannot obtain coverage via paragraph 5.e(2). That paragraph contains an "additional exclusion" to the coverage provided in the additional insured endorsement, which by its terms does not provide coverage. Coverage cannot be supplied by an exclusion. Progressive Cas. Co. v. McManus, 83 Or. App. 582, 586 n.5, 732 P.2d 932 (1987) ("Coverage must be found in the liability sections of the policy, not in its exclusions."). At any rate, KinderCare could only have coverage for the liability if Dawson's injury occurred during School Specialty's "ongoing operations" for KinderCare. See id. ("We do not consider any one provision in isolation from all other provisions of the policy."). My reading of the policy is underscored by other language in the Additional Insured Endorsement, which provides that "[a] person or organization's status as an insured under this endorsement ends when [School Specialty's] operations for that insured are completed." Hiller Decl. Ex. 6, at 51 of 97.

Finally, contrary to KinderCare's argument, the language of paragraph 5 and paragraph 5.e(2) is not internally inconsistent. Paragraph 5.e(2) is intended to deal with the situation where an injury occurs during the "ongoing operations" of the named insured, occurring away from premises the named insured owns or rents, where the additional insured is the product supplier. If,

Page 9 - OPINION AND ORDER

for example, a third party were injured by the named insured's "handl[ing], distribut[ing] or dispos[ing] of" a product that a putative additional insured sold to the named insured, and the injury occurred during the named insured's "ongoing operations," the putative additional insured would only have coverage if it had an "insured contract" with the named insured requiring "products/completed operations hazard" coverage. See Hiller Decl. Ex. 6, at 34-35 of 97 (definitions for "products-completed operations hazard" and "your product").

For the foregoing reasons, KinderCare is not an additional insured under the Wausau policy and Wausau had no duty either to defend or indemnify KinderCare in the underlying case brought by Dawson.

III.    AISLIC Policy Language

AISLIC's policy contains the following relevant provisions:

**IV.    Definitions**

. . . .

    E.    **Insured** means each of the following, to the extent set forth:

      . . . .

      4.    Any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in the Schedule of Underlying Insurance [which includes Wausau] but not for broader coverage than is available to such person or organization under such underlying policies.

      . . . .

      7.    Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy but only with respect to:

        a.        liability <u>arising out of operations</u> conducted by you or on your behalf.

      F.      **Insured Contract** means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Decl. of Jay Christofferson Ex. 1, at 6-7 of 48 (underlined emphasis added).

Since KinderCare is not an additional insured under the Wausau policy, as is required in paragraph E.4, and since KinderCare's liability did not arise out of School Specialty's operations, as is required in paragraph E.7, it is not covered under the AISLIC policy either. As a result, AISLIC had no duty to indemnify KinderCare in the underlying action.

IV.    <u>Remaining Issues</u>

Since I have concluded KinderCare is not insured under either the Wausau or AISLIC policies, I need not resolve the question of whether KinderCare's self-insurance is primary to the excess Wausau and AISLIC policies.

## CONCLUSION

For the foregoing reasons, I deny KinderCare's motions for summary judgment (#78, #42) and grant Wausau and AISLIC's motions for summary judgment (#90, #55).

IT IS SO ORDERED.

Dated this    30th    day of July, 2010.

                                              /s/ Garr M. King
                                              Garr M. King
                                              United States District Judge