IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY**, an Alaska corporation, | Civil Case No. 07-642-KI *(Lead Case)* Civil Case No. 07-978-KI |
| Plaintiff, | OPINION AND ORDER ON KINDERCARE'S MOTION FOR JUDGMENT ON THE PLEADINGS |
| vs. | |
| **KINDERCARE LEARNING CENTER, INC.**, a Delaware corporation, | |
| Defendant. | |

Jay a. Christofferson
McCormick Barstow, Sheppard
Wayte & Carruth LLP
P. O. Box 28912
5 River Park Place East
Fresno, California 93720-1501

James L. Hiller
Hitt Hiller Monfils Williams, LLP
411 SW Third Avenue, Suite 400
Portland, Oregon  97204-2508

      Attorneys for Plaintiff

Louis A. Ferreira
Scott J. Kaplan
Timothy W. Snider
Stoel Rives, LLP
900 SW Fifth Avenue, Suite 2600
Portland, Oregon  97204

      Attorneys for Defendant

KING, Judge:

These are consolidated cases brought by two insurance companies, plaintiffs American
International Specialty Lines Insurance Company ("AISLIC") and Employers Insurance Company
of Wausau ("Wausau"), to recover from defendant KinderCare Learning Center the amount the
insurers paid to settle a lawsuit.  Before the court are KinderCare's Motion for Judgment on the
Pleadings (#104; #72) and, alternatively, KinderCare's Motion for Leave to File Third-Party
Complaint (#97; #65) and Motion for Leave to File Amended Answer and Affirmative Defenses
(#102; #70).  For the following reasons, I grant KinderCare's Motion for Judgment on the
Pleadings and deny as moot its Motions for Leave to File Third-Party Complaint and to File
Amended Answer and Affirmative Defenses.

## BACKGROUND

These consolidated cases have a long and storied history.  The underlying lawsuit giving
rise to these cases was brought by Nicholas Dawson, an injured child, against KinderCare and
School Specialty, Inc. in Multnomah County Circuit Court, as Case No. 0312-13913.  Dawson

alleged he was injured on October 13, 2003 at a KinderCare facility when he fell with a plastic toy

asparagus spear in his mouth.  The asparagus spear was part of a toy vegetable set that KinderCare

had purchased from School Specialty, the distributor of the product.  Dawson alleged claims of

strict product liability and negligence.  Wausau, School Specialty's primary insurer, and AISLIC,

which provided a commercial umbrella policy to School Specialty, settled the underlying action for

$3,508,301.16.  The insurers seek to recover from KinderCare the full amount, or a portion of the

amount, they paid to settle the lawsuit.

     In an August 25, 2002 contract, School Specialty agreed to provide products, such as the

toy vegetable set, to KinderCare from August 1, 2002 through July 31, 2005.  That contract

incorporated the terms of a Vendor Information Packet ("VIP") of January 25, 2002, which

included a term requiring School Specialty to name KinderCare as an additional insured under its

general liability policy for contractual liability, completed operations, and products liability.  The

VIP specifically required School Specialty to procure insurance as follows:

### INSURANCE REQUIREMENTS FOR VENDORS

     School Specialty, Inc. [name of vendor] agrees to indemnify and hold
KinderCare Learning Centers, Inc. harmless from all claims for property damage
and claims for personal or bodily injury, including death, which may arise from acts
by Vendor, its agents or employees, and its subcontractors and their agents and
employees.  Vendor agrees to maintain adequate insurance, in form and with
companies acceptable to KinderCare, to insure against the aforesaid as follows:

| TYPE OF INSURANCE | MINIMUM LIMITS OF LIABILITY |
|---|---|
| * * * | |
| General Liability (including contractual liability, completed operations, products liability, and contingent liability for acts of subcontractors) | $1,000,000 |

> Vendor's general liability and automobile liability insurance policies shall NAME KINDERCARE LEARNING CENTERS, INC. AS AN ADDITIONAL INSURED, and shall provide KinderCare with a 30 day notice of cancellation.

American Int'l Specialty Lines Ins. Co. v. KinderCare Learning Ctr., Inc., Opinion and Order 5, 2008 WL 2502167, at *2 (D. Or. June 20, 2008) (#55) (hereinafter, "2008 O&O).

KinderCare was self-insured for the first $500,000 of any exposure, and it carried an excess policy with Discover Property & Casualty Insurance Company.

Wausau accepted KinderCare's tender of defense of the Dawson lawsuit on August 13, 2004, but reserved all rights. Wausau did not pay any of the defense bills, however. In the middle of January 2005, the parties came to an agreement that Wausau would pay the defense costs with a reservation of rights.

The parties settled the underlying action with Dawson for $3,508,301.16 on March 1, 2005.

In the pending action, Wausau brings an indemnity claim against KinderCare and/or Discover Property & Casualty Insurance Company, seeking to recover the $1,000,000 it paid in the settlement. It also seeks defense costs in the amount of $231,508.73. It alleges that KinderCare was self-insured for the first $500,000, and Discover insured the next $1,000,000 in liability. If these other sources did not provide primary coverage, Wausau seeks a proportionate split of the defense costs and settlement.

AISLIC brings claims for indemnity and contribution to recover $2,508,301.16, the portion of the settlement amount it paid.

I held in June 2008 that School Specialty contractually agreed in the VIP to indemnify KinderCare's negligence and that the indemnification provision was conspicuous; I entered a Rule 54(b) judgment at the parties' request so that the insurers could appeal the opinion. The Ninth

Circuit disagreed, finding the indemnity provision to be inconspicuous, but upheld my finding that the VIP was incorporated into the contract.  American Int'l Specialty Lines Ins. Co. v. KinderCare Learning Ctrs., Inc., 365 F. App'x 64, 66 (9th Cir. 2010) (#71) (hereinafter, "Ninth Cir. O&O").

After returning to this Court from the Ninth Circuit, KinderCare again moved for summary judgment, asserting that it was an additional insured under the Wausau and AISLIC policies.  I granted AISLIC's and Wausau's Cross-Motion for Summary Judgment, concluding KinderCare was not an additional insured under the Wausau policy and Wausau had no duty to defend or indemnify KinderCare in the Dawson case based on the language of the insurance policy, which covered only the "ongoing operations" of the insured.  KinderCare was also not covered under the AISLIC policy since KinderCare was not an additional insured under the Wausau policy, and since KinderCare's liability did not arise out of School Specialty's "operations."  American Int'l Specialty Lines Ins. Co. v. KinderCare Learning Ctr., Inc., Opinion and Order 11, 2010 WL 3057808, at *3 (D. Or. July 30, 2010) (#96) (hereinafter, "2010 O&O).

KinderCare has filed a Motion for Judgment on the Pleadings seeking judgment against the insurers on the basis that they may not seek indemnity from it.  Additionally, KinderCare challenges AISLIC's contribution claim, arguing that because AISLIC stands in the shoes of School Specialty its claim is waived or barred by School Specialty's breach of contract for failing to procure insurance.  Alternatively, KinderCare seeks to (1) file a third-party complaint against School Specialty, Inc. and Hays Companies of Wisconsin (School Specialty's insurance broker), seeking indemnity for breach of contract for failure to obtain liability insurance for KinderCare, including product liability insurance, and for failing to name KinderCare as an additional insured;

and (2) an Amended Answer and Affirmative Defenses alleging that it is entitled to set off or

recoup damages attributable to School Specialty's breach of contract.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment "on the

pleadings" after the pleadings are closed, but well-before trial.  "Judgment on the pleadings is

proper when the moving party clearly establishes on the face of the pleadings that no material issue

of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach

Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989).  If "matters outside the

pleadings are presented to and not excluded by the court, the motion must be treated as one for

summary judgment under Rule 56."  Fed. R. Civ. P. 56(d).  A document is not "outside" the

complaint if the complaint refers to it.  Indeed, the court may even consider documents "whose

contents are alleged in a complaint and whose authenticity no party questions, but which are not

physically attached to the [plaintiff's] pleading[.]"  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.

1994) (overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir.

2002)).  Additionally, the court may take judicial notice of its own records, Chandler v. U.S., 378

F.2d 906, 909 (9th Cir. 1967), and may consider judicially noted facts in resolving a motion for

judgment on the pleadings.  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

Following this guidance, I consider the allegations in the Dawson complaint, the

provisions of the two insurance policies, and the language in the VIP in resolving this motion.

## DISCUSSION

I.    KinderCare's Motion for Judgment on the Pleadings

    A.    The Insurers' Claims for Indemnity

KinderCare argues, and I agree, that under Oregon law the insurers may not assert claims for indemnity, only subrogated contribution claims. In Safeco Ins. Co. v. Russell, 170 Or. App. 636, 638, 13 P.3d 519 (2000), the court explained that an insurer may not seek indemnity from a driver who allegedly caused the injuries for which the insurer paid benefits to its insured. Instead, the insurance company's remedy was a contribution claim by way of subrogation because the insurance company and the driver owed no common duty to the injured party–the insurance company's contractual relationship with its insured was "distinct from the duty of due care that" the driver owed the insured. 170 Or. App. at 640-41. KinderCare contends that indemnity may have been appropriate when it was thought to be an additional insured, but now that the insurers have successfully argued that their duties were only to School Specialty, and not to KinderCare or Dawson, there is no shared obligation among KinderCare and the insurers from which an indemnity claim may arise.

In sum, KinderCare is entitled to judgment dismissing the indemnity claims as a matter of law. AISLIC's First Claim for Relief is dismissed and Wausau's Second Claim for Relief is dismissed.

      B.      Whether Any Breach by School Specialty is a Defense to Contribution

AISLIC's remaining claim is one for contribution against KinderCare. The claim is based on the equitable doctrine of subrogation, which "[i]n the insurance context, . . . permits an insurer in certain instances to recover what it has paid to its insured by, in effect, standing in the shoes of the insured and pursuing a claim against the wrongdoer." Koch v. Spann, 193 Or. App. 608, 612, 92 P.3d 146 (2004). However, "an insurer may pursue a subrogation claim only if its insured could have pursued the underlying claim, and the insurer's claim is subject to all of the defenses that

could have been asserted if the insured had pursued the underlying claim." Id.  Finally, "an insurer

has no right to subrogation against its own insured; the insured could not have pursued the

underlying claim against himself or herself." Id.

KinderCare urges that since it is not an additional insured under School Specialty's

insurance policies, it is now apparent that School Specialty breached its contract with KinderCare;

it argues that such a breach is a complete defense to the insurers' subrogated contribution claims.

1.    School Specialty's Contract with KinderCare

KinderCare assumes in its argument that the VIP required School Specialty to obtain

insurance that would cover the Dawson settlement.  The insurers dispute KinderCare's assertion.

The VIP provides:

School Specialty Inc. agrees to indemnify and hold KinderCare Learning Centers,
Inc. harmless from all claims for property damage and claims for personal and
bodily injury, including death, which may arise from ***acts by Vendor***, its agents or
employees, and its subcontractors and their agents and employees.  Vendor agrees to
maintain adequate insurance, in form and with companies acceptable to KinderCare
to insure against the aforesaid, as follows:

Type of Insurance                    Minimum Limits of Liability

* * *

General Liability (including          $1,000,000
contractual liability, completed
operations, products liability,
and contingent liability for acts
of subcontractors)

* * *

Vendor's general liability and automobile liability insurance policies shall NAME
KINDERCARE LEARNING CENTERS, INC. AS AN ADDITIONAL INSURED,
and shall provide KinderCare with a 30 day notice of cancellation.

2008 O&O 5 (emphasis added).

The insurers suggest Wausau's policy covering liability arising out of School Specialty's "ongoing operations" was sufficient since it included "acts by Vendor." The insurers contend "acts" is a synonym of "operations." See http://thesaurus.com/browse/act (last visited Mar. 17, 2011).[1] Alternatively, the insurers believe questions of fact exist as to what was intended by the language in the VIP, whether the insurance procured by School Specialty satisfied its contractual obligation to KinderCare, and the circumstances surrounding formation of the contract. Finally, they suggest that the language of the contract is ambiguous.

As an initial matter, the interpretation of the language of the VIP and the insurance is a matter of law for the court if the language is unambiguous. Timberline Equip. v. St. Paul Fire & Mar. Ins., 281 Or. 639, 643, 576 P.2d 1244 (1978). Consequently, the questions of fact identified by the insurance companies are irrelevant unless the language is ambiguous.

I read the VIP to mean what it says: it requires coverage for "bodily injury . . . which may arise from acts by Vendor[.] . . . Vendor agrees to maintain adequate insurance . . . to insure against the aforesaid" by maintaining "general liability (including contractual liability, completed operations, products liability, and contingent liability for acts of subcontractors)" in the amount of at least $1,000,000. 2008 O&O 5. Additionally, "general liability and automobile liability insurance policies shall NAME KINDERCARE LEARNING CENTERS, INC. AS AN ADDITIONAL INSURED[.]" Id. Read in its entirety, the VIP required that KinderCare be an "insured" for claims covered by those specified types of insurance when the "property damage and

---

[1]In their supplemental memorandum, the insurance companies write, "This Court has concluded that the injury to Nicholas Dawson did not arise out of School Specialty's 'acts.' *American Int'l Specialty Lines Ins. Co. v. KinderCare Learning Ctr.*, 2010 U.S. Dist. LEXIS 78374 at * 9-10 (D. Or. 2010)." Pls.' Supp. Mem. at 3-4. This Court did no such thing. Instead, the Opinion and Order I issued on August 2, 2010 was limited to an examination of the language of the insurance policies, not the language of the VIP. 2010 O&O 11.

claims for personal or bodily injury" "ar[o]se from acts by" School Specialty and that it be named an additional insured on such a policy.  Id.

The insurance companies do not argue persuasively that the language of the agreement is ambiguous.  For a contract or term to be ambiguous, "it must be susceptible to at least two plausible interpretations when examined in the context of the contract as a whole."  Moon v. Moon, 140 Or. App. 402, 407, 914 P.2d 1133 (1996) (quotation and citation omitted).  The insurers cite United States v. FMC Corp., 572 F.2d 902, 906 (2nd Cir. 1978), in which they contend the court found the word "act" to be ambiguous.  The court made that comment in circumstances too different from the facts at hand to be useful; it was faced with the question of whether an "act" must be knowing in order to be criminally liable.  The insurance companies also assert that KinderCare could have required indemnification for its "own liability, but instead limited the indemnity obligation to School Specialty's acts."  Pls.' Supp. Mem. 8.  This is certainly true, but I fail to see how the absence of such language renders the VIP ambiguous.

The VIP, then, required more coverage than School Specialty provided.  So, while it is true, as the insurance companies argue, that "ongoing operations" coverage complied with the demand for coverage for "acts by Vendor," it was nevertheless insufficient because "acts by Vendor" requires broader coverage; it is not temporally limited to acts that are "ongoing" and it implies something broader than "operations."  Indeed, the "acts" of School Specialty would include the act of distributing a product to KinderCare that, as Dawson alleged, was defective, unreasonably dangerous, and without adequate warnings or instructions.  Further, any uncertainty is resolved when I read the words "acts by Vendor" in the context of the provision as a whole, as I am required it do; the specific requirement in the VIP that School Specialty name KinderCare an additional

insured on its product liability policy means that "acts" must be broader than "operations." In sum, insurance providing coverage only for "ongoing operations" or "operations" of School Specialty does not meet the requirements of the agreement, which required coverage in the form of product liability insurance for "bodily injury . . . which may arise from acts" by School Specialty.[2]

2. The Effect of a Contractual Obligation to Obtain Insurance

Given that the VIP required School Specialty to name KinderCare as an additional insured in a policy providing product liability coverage, I must evaluate the effect of that promise on the insurers' subrogated contribution claims. Three Oregon cases suggest that a contractual obligation to procure insurance is a compete defense to a contribution claim for damages that fall within the terms of the contract.

In Waterway Terminals v. P.S. Lord, 242 Or. 1, 22-23, 406 P.2d 556 (1965), the owner of a dock and warehouse hired the defendant to build a cargo conveyor system and expressly contracted to obtain fire insurance. Defendant's welding operation caused a fire and the owner brought an action against the defendant. The owner obtained fire insurance for its own protection, and not for the protection of defendant. Although another portion of the contract relieved the owner of liability for damage caused by defendant's negligence, the Oregon Supreme Court held that the owner's breach of its promise to obtain fire insurance was a "complete defense to the claim of the [owner] to recover for damage to the cargo lifts" because fire insurance "universally covers loss by fire occurring from the kind of negligence here involved." 242 Or. at 22-23 (quoting General Mills v. Goldman, 184 F.2d 359, 364-65 (8th Cir. 1950)). The court relied on "several recent cases" in

---

[2]This is consistent with my conclusion in July 30, 2010 Opinion and Order that operations coverage is typically limited in insurance policies to "manufacturing, contracting or transportation" while product liability insurance "covers liability arising out of products that the insured manufactures, distributes or sells[.]" 2010 O&O 9.

which the courts had "held that an agreement of the parties to a lease obligating the landlord to carry insurance on the leased premises is a complete defense to an action by the landlord, or by his insurer as subrogee, against the tenant for negligence in causing a fire[.]"  Id. at 21.  The court then concluded, "We think . . . the controlling consideration in the decision of these cases was the general understanding of what fire insurance means.  It cannot be assumed that in negotiations for a contract a party knowingly asks for something which would be of no value to him."  Id. at 22-23.

    In Koennecke v. Waxwing Cedar Prod., 273 Or. 639, 642, 543 P.2d 699 (1975), the owner of a sawmill agreed in a lease with defendant to "maintain full insurance coverage protecting [various items of sawmill equipment] against loss by fire[.]"  A fire destroyed the buildings and equipment at the sawmill and the owner sought to recover from the negligent defendant.  Relying on Waterway Terminals, the court held that "the fire insurance clause constitutes a complete defense to plaintiff's first cause of action [to recover damages for the destruction of real property improvements and equipment]."  273 Or. at 646, 640.

    Finally, in Koch, 193 Or. App. at 618, the Oregon Court of Appeals carefully examined Waterway Terminals and Koennecke and concluded these courts "reasoned that, permitting the owner or lessor to proceed against the tenant or lessee would deprive the latter of the benefit of what it bargained for:  insurance against liability for its own negligence."  On the facts of that case, the court concluded the landlord's lawsuit to recover from the tenant for negligently starting a fire was not barred because the landlord had not contractually agreed to procure fire insurance.

    I note that KinderCare reads these cases to mean it need not prove School Specialty breached its agreement with KinderCare.  It contends that "an agreement to procure insurance for another constitutes a 'waiver of subrogation claims.'"  Def.'s Reply in Supp. of Mot. for J. on the

Pleadings 6 (quoting <u>Koch</u>, 193 Or. App. at 617).  I first point out that <u>Waterway</u> expressly

concluded that the owner's failure to procure fire insurance was a "breach of the plaintiff's

agreement to furnish fire insurance on the cargo lift equipment . . . [that was] a complete defense to

the action so far as it related to that portion of the loss."  242 Or. at 36.  Nevertheless, whether the

query is phrased in the positive–did School Specialty agree to procure insurance for KinderCare

that would cover its liability here–or the negative–did School Specialty breach its obligation to

procure insurance for KinderCare that would cover its liability here–in order to resolve the dispute,

I must determine what the VIP required School Specialty to procure.

As I concluded above, the VIP required coverage in the form of product liability insurance

for "bodily injury . . . which may arise from acts" by School Specialty and that KinderCare be

named an additional insured on such a policy.  School Specialty failed to procure insurance that

met those criteria.  The lessons the <u>Waterway</u> line of cases teach are that an agreement to procure

insurance will act as a compete defense to a contribution claim for liability that falls within the

scope of what the contract called for, and it is also a complete defense to a claim made by the

party's insurer in a subrogated contribution claim.  Nevertheless, two questions remain:  (1) would

the insurance School Specialty was obligated to procure have covered KinderCare's liability here;

and (2) if the insurance would have covered its liability, in what amount.

> a.    <u>Scope of Insurance</u>

Like <u>Waterway</u>, I must consider "the general understanding of what [product liability

insurance] means.  It cannot be assumed that in negotiations for a contract a party knowingly asks

for something which would be of no value to him."  242 Or. at 22-23.  Here, the policies define the

"products-completed operations hazards" as "all 'bodily injury' . . . occurring away from premises

you own or rent and arising out of 'your product.'" Wausau Policy 34 of 97 (58 in PDF) (#90-4);

AISLIC Policy 9 of 48 (12 in PDF) (#90-3). "Your product" is defined to be "any goods or

products . . . manufactured, sold, handled, distributed or disposed of by" School Specialty.

Wausau Policy 35 of 97 (59 in PDF); AISLIC Policy 9 of 48 (12 in PDF). The ordinary meaning

of "arising out of" is broad and requires only "a causal connection, rather than a proximate causal

connection." Ristine v. Hartford Ins. Co., 195 Or. App. 226, 231, 97 P.3d 1206 (2004). The broad

language of the product liability coverage has been interpreted to insure even the vendor's own

negligence. See Def.'s Supp. Mem. 11 (collecting cases); see also Laminated Wood Prods., Co. v.

Pedersen, 76 Or. App. 662, 670, 711 P.2d 165 (1985) (accepting "a broad construction [of product

liability insurance provision] so that it covers any injury caused in fact by a product manufactured,

sold, handled or distributed by the insured.").

    Based on the allegations in the Dawson complaint, it seems to me that he suffered "bodily

injury" "arising out of" School Specialty's toy asparagus. Dawson alleged,

> As a result of the unreasonably dangerous and defective design and manufacture of
> the asparagus spear, Nicholas Dawson sustained injury to the muscles, tendons,
> nerves, veins, arteries, and soft tissues of the neck and mouth; a puncture,
> penetration and laceration of the throat and carotid artery; blood clots and strokes;
> brain injury; right hemispheric cerebrovascular injury; occluded right internal
> carotid artery; hermiplegia with aphasia; numbness and paralysis; movement
> disorder; impulsivity disorder; cognitive disorder; attention-deficit/hyperactivity
> disorder; worsening of pre-existing but non-disabling obsessive and hyperactive
> tendencies; impaired mobility, all of which injuries, and the consequences of them,
> are permanent . . . .

AISLIC's Req. for Judicial Notice, Ex. A, Fourth Am. Compl. 3-4 (#90-6). Consequently, the

parties contemplated insurance coverage for damages like those alleged by Dawson that were

caused in fact by a product distributed by School Specialty.

b.    <u>Amount of Insurance</u>

Relying on its assertion that School Specialty's promise to obtain insurance is a waiver of the subrogated contribution claims, KinderCare contends such a promise is a complete defense to this lawsuit.  Additionally, if School Specialty had procured insurance as it had agreed, KinderCare argues, the insurance companies would not be permitted to pursue subrogation claims against KinderCare.  According to KinderCare, an insurer cannot pursue a subrogation claim against its own insured–no matter the policy limits.

As I noted above, I disagree with KinderCare's interpretation of the <u>Waterway</u> line of cases. The cases focus on giving the parties what they bargained for.  Accordingly, in <u>Waterway</u>, the owner's failure to obtain fire insurance "in the amount equal to the value of the equipment" for the benefit of the defendant was a "complete defense to the claim of damage" but only to the "cargo lifts" in the amount of $147,455, out of the total $352,540.87.  <u>Waterway</u>, 242 Or. at 11, 14, 23. Accordingly, giving the parties what they bargained for in the VIP, School Specialty's failure to procure general liability insurance, including product liability insurance, in the amount of $1,000,000 would be a complete defense to the claim of damage in the amount of $1,000,000.

However, in addition to requesting that School Specialty procure insurance in the amount of $1,000,000 for product liability coverage, KinderCare demanded that School Specialty name it as an additional insured.  This promise is key to my conclusion that AISLIC's contribution claim is barred.  While School Specialty named KinderCare as an additional insured on policies providing $2,000,000 in product liability coverage for covered entities and $25,000,000 in excess coverage, it failed to make KinderCare a covered entity for product liability coverage.  By the terms of the VIP, as an additional insured KinderCare's liability should have been covered to the same extent as

School Specialty's.  Indeed, had School Specialty named KinderCare an additional insured,

KinderCare would have been covered under AISLIC's excess policy by the terms of that policy.

AISLIC Policy 7 of 48 (10 in PDF) ("Insured" includes any person who is an "additional insured in

the policies listed in the Schedule of Underlying Insurance [Wausau Policy]").  School Specialty's

failure to name KinderCare an additional insured on its product liability policy is a complete

defense to AISLIC's contribution claim; this outcome is consistent with the rule that insurance

companies may not pursue a subrogated contribution claim against their own insured.

 The insurance companies argue that an insurer may subrogate against its own insured for an

uninsured loss.  Here, however, the loss should have been an insured loss.

 C. The Effect of the VIP Indemnity Provisions and "Contractual Liability" Insurance

 KinderCare alternatively relies on the portion of Section 13 in which School Specialty

agreed to "assume the risk of" all bodily injury "resulting from or in anyway connected with"

School Specialty's products "regardless of whether such loss, damage, [or] liability . . . is caused in

part" by KinderCare.  2008 O&O 4.  KinderCare argues that this provision alone bars the insurance

companies "from seeking to foist that risk back onto KinderCare through subrogation claims."

Def.'s Supp. Mem. at 3.  Although I need not resolve this argument, for the benefit of the parties, I

reach the following conclusions.

 Section 13 reads as follows:

 13.  **INDEMNITY AGREEMENT**:  For and in consideration of the covenants of
KinderCare under this Order, including the agreement of KinderCare to pay to
Vendor the amounts which may become due and payable in accordance with the
terms of this Order, Vendor hereby agrees to assume the risk of, indemnify and save
harmless KinderCare, and its officers, directors, employees, agents and successors
and assigns of each (hereinafter "Indemnitees") from and against (and at the election
of Indemnitees, to defend against) all loss, damage, liability, cost and expense
(including without limitation, reasonable attorneys' fees at trial, on appeal and on

> any petition for review) . . . arising out of any injury (including death) to any person
> or damage to any property <u>resulting from or in any way connected with the
> performance of this Order or the goods and services furnished hereunder</u>, regardless
> of whether or not such loss, damage, liability, cost or expense is caused in part by an
> Indemnitee.  <u>Neither this Section nor any other provision of this Order shall be
> construed in any circumstances to constitute an indemnification against loss,
> damage, liability, cost or expense caused solely by the negligence of such
> Indemnitee.</u>

2008 O&O 4 (emphasis added in Opinion).

The Ninth Circuit previously ruled that, because Oregon law requires an indemnity

provision to be conspicuous, if it was not specifically bargained for or brought to the indemnitor's

attention at the time of contracting, the indemnity provision in Section 13 of the VIP is

unenforceable for inconspicuousness.

KinderCare's reading of the assumption of risk provision would mean that School Specialty

assumed the risk of liability to third parties, even if caused by KinderCare's negligence.  Although

KinderCare parses the language of Section 13, arguing that courts construe the "assumption of

risk" and "hold harmless" duties separately from a duty to indemnify, I cannot believe the Ninth

Circuit would agree with KinderCare's reading of Section 13.  I am loathe to agree with an

interpretation of Section 13 that would, in effect, work to indemnify KinderCare when the Ninth

Circuit found the indemnification provision to be unenforceable.

KinderCare also argues that, in addition to product liability insurance, School Specialty

agreed to obtain contractual liability insurance.  KinderCare explains that "the purpose and effect

of the 'contractual liability' insurance requirement was to insure against KinderCare's tort

liability."  Def.'s Supp. Mem. at 7.  As a result, KinderCare argues, the VIP constitutes an "insured

contract," as that term is defined in the policies, which means that School Specialty agreed to bear

the risk of all liability arising from its products, even where KinderCare was partly at fault.  An

"insured contract" is defined in the policies to mean "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization." Wausau Policy 16 of 97 (40 in PDF); AISLIC Policy 7 of 48 (10 in PDF).

As an initial matter, KinderCare mixes its indemnification provisions. The contractual liability insurance requirement appears in the Insurance Requirements for Vendors portion of the VIP, not Section 13 of the VIP. In the Insurance Requirements for Vendors, KinderCare demanded that School Specialty "maintain adequate insurance to insure against the aforesaid [bodily injury which may arise from acts by School Specialty] as follows: . . . contractual liability" in the amount of $1,000,000. 2008 O&O 5. This language does not indicate unequivocally that School Specialty agreed to insure KinderCare's negligence. As the Ninth Circuit commented, it is "simply silent on the question of negligence." Ninth Circuit O&O 4.

Even assuming, however, that Section 13 of the VIP makes the agreement an "insured contract" within the meaning of the policies, the Ninth Circuit has held the section unenforceable for inconspicuousness. KinderCare contends that courts have "repeatedly held" that an unenforceable indemnity agreement can be an "insured contract," but it provides no Oregon authority or Ninth Circuit authority for this proposition. I think the better rule is that "[u]nenforceable indemnity language in an incidental contract should excuse the insurer's obligations. Assuming no assumption of tort liability exists, there can be no insured contract coverage." Expanding Liability Coverage: Insured Contracts and Additional Insureds, 44 Drake L. Rev. 781, 795 (1996). Accordingly, I deny KinderCare's motion to the extent it is based on Section 13 of the VIP or the "contractual liability" insurance coverage provision.

D.    Conclusion

In sum, I do not accept KinderCare's argument that the Dawson liability is covered by the "contractual liability" coverage or that KinderCare can rely on Section 13 in arguing that School Specialty assumed the risk of all liability "in any way connected with" the asparagus spear. However, as I explained above, School Specialty's failure to name KinderCare an additional insured on product liability insurance, and the fact that such insurance would have covered Dawson's "bodily injury" "arising out of" School Specialty's toy asparagus, means that the insurance companies' subrogated contribution claims are barred.  To hold otherwise would be to allow the insurers to recover damages from KinderCare that their insured contractually agreed to cover.

E.    Wausau's Claim for Defense Costs

I instruct Wausau to specify the basis for its claim for defense costs.  It clarified at oral argument that the claim is not based on indemnity or contribution, but is instead an express or implied contract theory.  Wausau must set out the basis for its claim in an amended complaint that must be filed within ten days of this Opinion and Order.

F.    Conclusion on KinderCare's Motion for Judgment on the Pleadings

KinderCare's Motion for Judgment on the Pleadings is granted as to the insurance companies' indemnity claims and AISLIC's contribution claim, and granted as to Wausau's claim for defense costs with leave to Wausau to file an amended complaint specifying the basis of its claim.

II.    KinderCare's Motion to File a Third Party Complaint and Amend its Answer and Affirmative Defenses

KinderCare seeks to file a third-party complaint against School Specialty and Hays Companies of Wisconsin, which was School Specialty's insurance broker, and seeks to amend it's answer and affirmative defenses.

These are motions KinderCare brought in the alternative to its Motion for Judgment on the Pleadings. Since I grant its motion for judgment on the pleadings, I do not need to reach these motions. For the record, I would have granted these motions had I denied KinderCare's motion for judgment on the pleadings.

## CONCLUSION

For the foregoing reasons, KinderCare's Motion for Judgment on the Pleadings (#104; #72) is granted and its Motion for Leave to File Third-Party Complaint (#97; #65) and Motion for Leave to File Amended Answer and Affirmative Defenses (#102; #70) are denied as moot. AISLIC's and Wausau's claims for indemnity are dismissed and AISLIC's claim for contribution is dismissed. Wausau's claim for defense costs is also dismissed, but it has leave to amend its complaint to set out its theory of recovery for defense costs against KinderCare within ten days of this Opinion.

The pretrial conference scheduled for April 4, 2011 and the six-day trial scheduled for April 12, 2011 are stricken.

IT IS SO ORDERED.

Dated this _____18th_____ day of March, 2011.

                     ___/s/ Garr M. King_____
                     Garr M. King
                     United States District Judge